828                     August 20, 2025                     No. 753

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Siora Johanna ARCE,
*Petitioner-Respondent,*
*and*

David Edgar RIVERA-VERNAZZA,
*Respondent-Appellant.*

Marion County Circuit Court
21DR16612; A179926

Sean E. Armstrong, Judge.

Argued and submitted July 23, 2025.

Kimberly Quach argued the cause for appellant. Also on the reply brief was Quach Family Law, P. C. On the opening brief was Sarah Silberger.

Daniel S. Margolin argued the cause and for respondent. Also on the brief was Margolin Family Law.

Before Kamins, Presiding Judge, Jacquot, Judge, and Armstrong, Senior Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Father raises two assignments of error in his appeal, challenging the custody and parenting time determinations of the court. In his first assignment of error, he argues that his procedural due process rights were violated due to the way in which his remote *pro se* appearance at trial was handled, thereby infringing his fundamental liberty interest in parenting. In his second, he argues that the trial court erred by denying his ORCP 71 B motion for relief from the judgment. For the reasons provided below, we affirm.

Father and mother are the parents of twins, currently nine years old. The parents separated in 2018; father now resides in Eugene and mother continues to live in Salem. The parents disagree about what the historical division of parenting time and responsibilities has been, but testimony from both parents indicates that mother has been a primary caregiver for the children throughout their life, and that after father moved out of the home in 2019, he has had variable parenting time. In response to an attempt made by father to institute a 50/50, one-week-on, one-week-off schedule, mother filed a petition for custody, parenting time, and child support in September 2021.

Three hearings occurred between January and July 2022, and father participated by phone in all three. At the beginning of each hearing, the trial court asked each party if they could hear, but the transcripts from those hearings include multiple notations of "inaudible" audio, suggesting that, intermittently, it may have been difficult to hear speakers. During at least one hearing, the record indicates that two individuals were speaking over each other, but it is not clear whether that happened because they could not hear each other or for another reason.

In October 2022, a one-day trial was held to address custody, parenting time, and child support. Mother was represented by counsel and appeared in person. Father was *pro se* and attempted to appear in person. However, father had symptoms consistent with either a cold or COVID-19, and he was not permitted to appear in person due to public health measures within the courthouse at that time. Father

appeared by phone, from his car in the parking lot outside the courthouse. At the beginning of the hearing, the trial court asked father if he could hear, and father responded that he could but "barely." Review of the trial transcript indicates that there were numerous instances of poor audio quality and inaudible speech. At times, individuals spoke over one another. Additionally, at one point father was disconnected from the line for approximately ten minutes. When father rejoined the call, the trial court endeavored to figure out what was missed by father and had that portion of examination and testimony repeated by mother and her counsel. Father asserts that there were instances of low volume or inaudible communication between the trial judge and mother's counsel.[1]

Notably, at the beginning of trial, mother's counsel moved to have the case set over. She raised several concerns including that there was not enough time on the court's calendar that day, that father was not present and credibility was a major issue in the case, and that father did not have copies of exhibits. The court asked father, "do you want to postpone the hearing or do you want to have it today?" Father responded that he wanted to begin that day. The court denied mother's motion to have the case set over, instructed that copies of the exhibits be brought to father in his vehicle, and the trial proceeded.

Father requests *de novo* review, because in his view, that is necessary in order to reach the arguments he raises regarding his constitutional rights. We have discretion to review domestic relations and parenting cases *de novo*, but we do so "only in exceptional cases." ORAP 5.40(8)(c); *see* ORS 19.415(3)(b) (describing discretionary *de novo* review). This case does not present exceptional circumstances justifying *de novo* review, *see* ORAP 5.40(8)(d) (outlining nonexclusive criteria relevant to the determination of whether to review *de novo*), and the *de novo* request does not indicate any reason why we would be better at deciphering the inaudible portions of the transcript than the trial court. "Accordingly, we are bound by the trial court's explicit and implicit findings of historical fact as long as they are supported by any

---

[1] In her answering brief, mother does not contest that assertion but argues that most of the low volume portions cited by father "do not occur during substantive testimony."

evidence in the record, and we review the trial court's legal conclusions for errors of law." *Yocum and Pockett*, 328 Or App 613, 614, 537 P3d 979 (2023).

We need not apply *de novo* review in order to acknowledge the procedural facts represented in the record, such as father's approximate 10-minute phone disconnection from the hearing. The Oregon Rules of Appellate Procedure include procedures for dealing with transcript problems that father did not employ. *See, e.g.*, ORAP 3.40 (relating to addition to or corrections of a transcript). ORS 19.385 provides that the audio record may serve as the appellate record if "the court to which the appeal is made [has] waive[d] transcription." Many of the technological issues described by father appear on the face of the transcription or are uncontested by the parties. Thus, for purposes of our analysis, we assume their accuracy.

In his first assignment of error, father asserts that his fundamental liberty interest in parenting was violated and that it was plain error "when, on the day of trial * * * concerning his children, he was not allowed to appear in-person and was required to appear from his parked vehicle, by audio only, using his cellphone." He alternatively asserts that his argument was preserved through his motion for relief from judgment pursuant to ORCP 71 B. A motion for relief from judgment—filed more than six months after the occurrence of the procedures that father complains of—does not suffice for purposes of preservation. *See Shields v. Campbell*, 277 Or 71, 79, 559 P2d 1275 (1977) (explaining that when a party "did not object, except or move to strike" a complained-of issue at trial, the matter was not preserved for appeal because "the trial court never had any opportunity to decide the issue or to correct any alleged error").

The conversation between the court and father regarding whether he could appear in person despite being symptomatic is not on the record, and we are thus unable to know the extent of that conversation. Nonetheless, although the record reflects that father was not granted permission to appear in person and had to appear remotely, nothing in the record suggests that father was required to appear from his car in the courthouse parking lot. We acknowledge that that

environment was likely not conducive to ideal participation in trial—as father notes in his brief, background noise and distractions were likely, as well as the need to juggle exhibits without a desk—nonetheless, there is no indication that father took reasonable steps to enable himself to participate more effectively such as asking for an opportunity to appear via phone from a more appropriate location. Further, father was asked if he wished to postpone the hearing and he said no several times, and did not request a continuance once technological issues occurred during the hearing.

Although father may have been better able to represent himself in another environment, any error alleged by father does not constitute plain error. A plain error "must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

Father's alleged error does not constitute plain error because it is not obvious that the trial court's management of the trial constituted an error of law. "It is well established that a trial court generally possesses broad discretion to control the proceedings before it." *State v. Rogers*, 330 Or 282, 300, 4 P3d 1261 (2000). Trial management must "accommodate the exercise of all pertinent constitutional and statutory rights by all parties." *Id.* at 301. Although we agree with father's assertion that there were technological difficulties during trial, the record does not support a determination that the trial court's management decisions were outside the bounds of what is legally permissible. Father raises interesting questions about constitutional parenting rights, but he does not point to any legal authority that would make it an error of law for the court to expect him to appear remotely. *See* CJO 22-012 (describing authority vested in presiding judges to allow remote appearances unless otherwise prohibited by law and describing other protective measures that may be imposed by presiding judges).

Furthermore, to reach father's alleged error as plain error, we would be required to choose among competing inferences. Father argues he was not apprised of any challenges he may face by appearing at trial via phone, yet the

record reflects that father—as well as other parties—had appeared in prior hearings via phone and that at least some of the technological difficulties could have been observed during those hearings. Father argues he was required to appear from his car in the courthouse parking lot, but nothing in the record reflects that. And the record indicates that father had the opportunity to request a continuance, which he declined to do.

In father's second assignment of error, he argues that the trial court erred by denying his motion for relief from the judgment pursuant to ORCP 71 B and ORS 107.431. We understand father's argument to be that he should have been granted relief from the judgment because "under the specific circumstances of this case, [father's] procedural due process rights and right to remedies were violated by requiring him to appear for his trial remotely ***." In his reply brief, he argues that the denial of his ORCP 71 B motion was an error of law because his "inability to fully-present his case represents a mistake and excusable neglect pursuant to ORCP 71 B(1)(a)."[2] Mother argues that "[a]n alleged due process violation is not a basis for which ORCP 71 B relief is available" and that the trial court appropriately "systematically dispelled each claimed technical difficulty" complained about by father.

"On review of an order denying a motion to set aside a judgment, we state the undisputed facts in the light most favorable to the moving party." *Kerridge v. Jester*, 316 Or App 599, 600, 502 P3d 1206 (2021), *rev den*, 369 Or 507 (2022). Regarding disputed facts, we accept the trial court's ruling if there is evidence to support those findings. *Id.* "We review a trial court's ultimate determination granting relief from a judgment under ORCP 71 B for abuse of discretion. However, whether a moving party has asserted a cognizable ground for relief under ORCP 71 B is a legal conclusion that we review for errors of law." *Id.* at 604.

Father does not develop a legal argument as to how any infringement of his due process rights would serve

---

[2] ORCP 71 B(1)(a) provides, in relevant part: "On motion and upon such terms as are just, the court may relieve a party *** from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect ***."

as a basis to grant his ORCP 71 B motion, nor does father explain what law he believes the court misapplied in denying his motion. We understand much of father's argument about the ORCP 71 B motion to be a request for us to relitigate the underlying facts under our discretionary *de novo* review. As discussed previously, the facts of this case are not exceptional so as to make *de novo* review appropriate. In his reply brief, he cites *Union Lumber Co. v. Miller*, 360 Or 767, 388 P3d 327 (2017), a case in which the Supreme Court determined that "the trial court did not commit legal error in concluding that [the] defendants were not entitled to relief from the judgment *** on the grounds of excusable neglect and mistake ***." *Id.* at 789. Father does not offer any explanation as to how *Union Lumber Co.* supports his argument that his inability to represent himself fully at the trial constitutes mistake or excusable neglect such that it was an error of law for the trial court to deny his motion. Upon our own review of *Union Lumber Co.*, we do not find support for father's argument that the denial of his ORCP 71 B motion constituted an error of law. Regarding excusable neglect, the Supreme Court determined that a trial court's determination "that defendants' neglect in failing to protect their interests was inexcusable," was not an error of law. *Id.* at 783. Regarding mistake, the Supreme Court also provided that "[i]n cases where this court has concluded that a judgment should be set aside due to mistake *** the moving party invariably had taken reasonable steps to protect its interests." *Id.* Based on *Union Lumber Co.'s* discussion regarding the burden a party has with respect to taking reasonable steps to protect their interests, the record in this case shows that father declined an opportunity to have the trial set over for another date and thus, considering the arguments and facts before us, we cannot say that the trial court erred as a matter of law or exceeded its discretionary authority in denying his ORCP 71 B motion.

Affirmed.